THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **STEVEN MURPHY, # M04196,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | Case No. 3:24-cv-00349-GCS |
| ) | |
| **LATOYA HUGHES,** ) | |
| **ANTHONY WILLS, and** ) | |
| **TONYA KNUST,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

This matter is before the Court for a preliminary merits review of Plaintiff Steven Murphy's First Amended Complaint (Doc. 16) and his Motion for Notice and Motion for TRO (Doc. 19). Plaintiff's original Complaint (Doc. 1), filed February 9, 2024, was dismissed for failure to state a claim. (Doc. 11).

Plaintiff is an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center. In this *pro se* civil action pursuant to 42 U.S.C. § 1983, he alleges Defendants have denied his requests for placement in protective custody ("PC"), retaliated against him for filing grievances and lawsuits, and created policies that violate his constitutional rights. (Doc. 16, p. 9-14). He seeks monetary damages and a transfer away from Menard. *Id.* at p. 15.

Under 28 U.S.C. § 1915A, the Court is required to screen prisoner complaints to

filter out non-meritorious claims.[1] *See* 28 U.S.C. § 1915A(a). Any portion of the First Amended Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* pleading are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE FIRST AMENDED COMPLAINT (DOC. 16)

Plaintiff alleges that the Defendants have targeted him for retaliation because he filed multiple grievances and lawsuits regarding medical treatment and other misconduct. (Doc. 16, p. 9, 12). The retaliation took the form of increasing his aggression level even though he did not get into trouble. (Doc. 16, p. 9-11). It also included Defendant Wills moving Plaintiff to the East House where he was threatened by gangs who learned from administrators about his case. *Id.* Plaintiff sought protective custody ("PC") placement in August 2021 based on those threats and has continued to seek PC. *Id.* Defendants Hughes and Wills, however, have denied his PC requests for over three years even though they know who is trying to harm him. *Id.* Wills has also retaliated against Plaintiff by "constantly" placing him in cells with mentally ill inmates in the hope he will get into a fight and get hurt. *Id.* at p. 10.

Defendants Hughes, Wills, and Knust created several "illegal policies" to "torture

---

[1] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 7), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, Wexford Health Sources, and the IDOC.

and harm" Plaintiff and other inmates. These policies include requiring an inmate who is denied PC to be "returned to the very place where he is in danger" or being given a disciplinary ticket for refusing housing and then being placed in segregation. (Doc. 16, p. 11). Plaintiff has received multiple tickets and segregation placements under this policy. Another of Defendants' "illegal policies" caused Plaintiff and others seeking PC to be placed in the Reception and Classification Building, where the cells are extremely cold, lack electricity or Wi-Fi, have windows that are painted over, and where inmates cannot have property or food and are denied privileges including chapel, law library, health care, and access to the "black grievance box" to prevent them from filing complaints. *Id.* at p. 9-14. Defendants further allowed inmate cellhouse workers to steal Plaintiff's property and commissary food. *Id.* at p. 9.

Wills has personally targeted Plaintiff on account of his multiple lawsuits over denial of medical treatment (*Murphy v. Wills, et al.*, Case No. 21-cv-559-DWD (S.D. Ill. filed June 9, 2021, dismissed March 27, 2024); and *Murphy v. Siddiqui, et al.*, Case No. 21-cv-324-SPM (S.D. Ill. filed Feb. 19, 2021, dismissed March 22, 2024)) and staff retaliation and mistreatment (*Murphy v. Wills, et al.*, Case No. 22-cv-2081-DWD (S.D. Ill. filed Sept. 6, 2022, settled/dismissed Dec. 5, 2024); *Murphy v. Wills, et al.*, Case No. 21-cv-1453-DWD (S.D. Ill. filed Nov. 18, 2021, settlement pending Dec. 2024); *Murphy v. Hughes, et al.*, Case No. 24-107-RJD (S.D. Ill. filed Jan. 16, 2024, still pending); *Murphy v. Sparling, et al.*, Case No. 21-cv-362-DWD (S.D. Ill. filed April 5, 2021, dismissed for failure to state a claim Feb. 16, 2022); and *Murphy v. Wills, et al.*, Case No. 24-cv-582-SPM (S.D. Ill. filed Feb. 28, 2024,

closed March 1, 2024 as duplicate to *Murphy v. Wills, et al.*, Case No. 24-cv-475-NJR)). (Doc. 16, p. 12). Wills's retaliatory actions include creating the policies described above with full awareness of the effects they would have on Plaintiff and others. Wills and Hughes personally denied Plaintiff's PC requests despite their knowledge that his safety and life were in danger. *Id.* Upon being denied PC, Plaintiff was told, under Wills's policy, that he had a choice between going to segregation or crisis watch. *Id.* at p. 9, 12. The crisis watch cells were dirty, contaminated with feces, unventilated, and the inmate was allowed only a dirty smock and blanket to cover his body. *Id.* at p. 12. Wills further has refused to allow Plaintiff to transfer to another prison because if he transferred, Wills would no longer be able to retaliate against him, and Plaintiff could obtain medical treatment. *Id.*

### DISCUSSION

Based on the allegations in the First Amended Complaint, the Court designates the following claims in this *pro se* action:

Count 1: Eighth Amendment and/or Fourteenth Amendment claim against Defendants for creating policies that deny Plaintiff access to his personal property, food, commissary, electronic devices, health care, and the grievance procedure, and where the cells are cold and windows are painted over, when he is housed in the Reception and Classification Building awaiting a decision on his protective custody "PC" requests.

Count 2: First Amendment claim against Wills for retaliating against Plaintiff because he filed lawsuits, by housing him in East House where he was threatened by gangs, placing him with dangerous mentally ill cellmates, and denying his requests to transfer to another prison.

>Count 3: First Amendment claim against Defendants for denying Plaintiff access to the law library while he was housed in the Reception and Classification Building.
>
>Count 4: First Amendment claim against Defendants for denying Plaintiff access to religious services while he was housed in the Reception and Classification Building.
>
>Count 5: First Amendment retaliation claim against Defendants for creating policies that return Plaintiff and other inmates to an unsafe housing location when their PC requests are denied, with the only alternatives being receiving a ticket for refusing housing and going to segregation, or going on crisis watch in an unsanitary cell.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

### Plaintiff's Relevant Litigation History

As previously noted, Plaintiff's case of *Murphy v. Hughes, et al.*, Case No. 24-cv-107-RJD (S.D. Ill. filed Jan. 16, 2024), is proceeding on claims that Plaintiff was injured after his PC requests were denied. Because Plaintiff does not seek redress in the instant case for the denial of his PC requests, and because this claim would be duplicative, the Court does not include such a claim in this case.

---

[2] *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

Plaintiff has filed two other cases related to the facts he describes in the instant matter: *Murphy v. Wills, et al.*, Case No. 21-cv-1453-DWD (S.D. Ill. filed Nov. 18, 2021, settlement pending Dec. 2024); and *Murphy v. Wills, et al.*, Case No. 22-cv-2081-DWD (S.D. Ill. filed Sept. 6, 2022, settled/dismissed Dec. 5, 2024). Case No. 21-cv-1453-DWD proceeded on four retaliation claims, including a claim against Wills for increasing Plaintiff's aggression level, moving him to the East House, and housing him with dangerous individuals after he sought an injunction in July 2021 in a pending lawsuit over medical care. *See Murphy*, Case No. 21-cv-1453-DWD (Doc. 16, May 9, 2022). In Case No. 22-cv-2081-DWD, Plaintiff included the allegations that Wills retaliated against him by changing his aggression level and relocating him to the East House with no valid basis, placing him in a cell with a known violent inmate, and punishing him with segregation based on his requests for PC, that began around July 2021. *See Murphy*, Case No. 22-cv-2081-DWD (Doc. 18, March 24, 2023). Plaintiff was allowed to proceed in that case on a retaliation claim against Wills as well as a claim that Wills and others failed to protect him. *Id.* Counsel was appointed for Plaintiff in both cases, and both matters have settled. (Doc. 88, 90 in Case No. 21-cv-1453; Doc. 48, 49 in Case No. 22-cv-2081).

**Count 1**

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Prison conditions that deprive inmates of basic human

needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *See Rhodes*, 452 U.S. at 346-47.

As with Plaintiff's original Complaint, the alleged deprivations of property, amenities, and access to programs for the period Plaintiff spent in the Reception and Classification Building while awaiting a decision on his PC requests are not sufficiently serious to violate the Eighth Amendment. Further, restrictions on privileges such as commissary, Wi-Fi, and electronic devices do not implicate the Fourteenth Amendment's Due Process Clause. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (noting no protected liberty interest in demotion to C-grade status and loss of commissary privileges). The fact that Plaintiff now asserts these deprivations were the result of policies created by Defendants does not alter the Court's analysis.

The First Amended Complaint contains new allegations that Plaintiff was denied access to health care and the grievance procedure during his time in the Reception and Classification Building. However, he gives no details on what medical issues he may have had for which he was unable to obtain care, who denied him medical attention, or when this happened.[3] Without such underlying facts, the Court has no basis to assess whether an Eighth Amendment violation occurred. Finally, there is no constitutional right to access the prison grievance procedure. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992).

---

[3] The Court notes that Plaintiff has brought three other lawsuits in this District over allegedly inadequate medical care during 2021 and 2024, Case No. 21-cv-324-SPM; Case No. 21-cv-559-DWD; and Case No. 24-cv-475-NJR.

For these reasons, Count 1 will again be dismissed for failure to state a claim upon which relief may be granted.

## Count 2

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). To state a retaliation claim, a complaint must set forth "a chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (internal quotation and citation omitted).

Plaintiff points to three lawsuits he filed in 2021, Case Nos. 21-cv-324-SPM, 21-cv-362-DWD, and 21-cv-559-DWD, which allegedly triggered Wills's retaliatory action of placing Plaintiff in the East House among hostile gang members. According to Plaintiff's timeline, that action prompted him to first seek PC placement in August 2021. Wills's alleged retaliation also includes housing Plaintiff with mentally ill inmates who posed threats to him. Plaintiff, however, gives no dates when this occurred. Plaintiff also indicates the increase in his aggression level was a retaliatory action. However, he does not indicate whether Wills or another official made that decision. Plaintiff also did not disclose the dates when his prison transfer requests were denied, but he indicates this was also prompted by his 2021 lawsuits.

The time frame when Plaintiff filed his three 2021 lawsuits may plausibly be connected to his placement by Wills in East House during that year. This claim would

survive review under § 1915A. However, the retaliation claim in Count 2 is clearly duplicative of the claims Plaintiff has now fully litigated in two cases: Case No. 21-cv-1453-DWD, and Case No. 22-cv-2081-DWD. Both cases asserted that Wills retaliated against Plaintiff starting in July 2021 for his litigation activity, by increasing his aggression level, moving him to the East House, and housing him with dangerous inmates. Those cases did not appear to include claims for denial of Plaintiff's transfer requests, but to the extent the transfer denials were prompted by Plaintiff's 2021 lawsuits, he could have, but did not raise that claim in those suits.

The doctrine of *res judicata*, or claim preclusion, bars relitigating claims that were, or could have been, decided on the merits in a prior lawsuit that involved the same parties, the same underlying transaction or occurrence, and where there was a final judgment on the merits. *See United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 271 (7th Cir. 2017); *Matrix IV, Inc. v. American National Bank & Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011). Plaintiff's retaliation claim against Wills falls squarely within these criteria. It is based on the same factual allegations that supported Case Numbers 21-cv-1453-DWD and 22-cv-2081-DWD, both of which were brought against Wills, and final judgment has been entered in Case No. 22-cv-2081-DWD (see Doc. 49 in that case). While final judgment is scheduled to be entered in No. 21-cv-1453-DWD by February 3, 2025 (See Doc. 90 in that case), it is sufficient that judgment on the merits was entered in one of these two duplicative cases. Accordingly, Count 2 will be dismissed with prejudice as barred by claim preclusion.

**Count 3**

The First Amended Complaint adds no new allegations in support of a claim for denial of access to the courts resulting from Plaintiff's lack of access to the law library during his time in Reception and Classification. Count 3 will again be dismissed for failure to state a claim, for the same reasons set forth in the Order dismissing the original Complaint. *See* (Doc. 11, p. 6).

**Count 4**

Again, the First Amended Complaint fails to add any new allegations explaining how Plaintiff's deprivation of chapel access while he was in Reception and Classification burdened his right to practice his religion. Count 4 will again be dismissed for failure to state a claim upon which relief may be granted. *See* (Doc. 11, p. 7).

**Count 5**

This new claim asserts that Defendants created harmful policies that require Plaintiff and other inmates whose PC requests were denied to either return to an unsafe housing assignment, face disciplinary action and segregation placement for refusing housing, or be placed on crisis watch under unsanitary conditions. Plaintiff asserts that these policies were created in retaliation for his litigation activity.

Count 5 does not survive § 1915A review as a retaliation claim. It is simply not plausible that Defendants created these prison-wide policies in retaliation for Plaintiff's individual lawsuits against Wills and other prison officials. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570. Moreover, Courts are instructed to give deference to prison

officials' discretion in matters of day-to-day prison management. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020). This deference applies to Defendants' creation of housing placement policies such as Plaintiff describes. Count 5 will be dismissed for failure to state a claim upon which relief may be granted.

## PENDING MOTION FOR TRO (DOC. 19).

The Motion for Notice and Motion for TRO (Doc. 19) is **DENIED**. The motion seeks relief based on incidents that occurred "within the last 70 days" including an alleged instance of excessive force on December 24, 2024, at the hands of officers who are not defendants in this action. (Doc. 19, p. 2). Plaintiff anticipates he will be placed in the East House, where he claims he will be unsafe, but he does not say he has actually been placed there. *Id.* at p. 2-3. These recent incidents happened well outside the time frame and scope of the claims raised in the instant case, and Plaintiff does not allege that any of the defendants were personally involved in the events described in his motion. His only mention of Defendant Wills is that Wills "just denied" his emergency grievance over the alleged excessive force. *Id.* at p. 2. This shows that Plaintiff has not exhausted the prison grievance procedure regarding his new allegations. Finally, the Court notes that this motion is duplicative, as Plaintiff filed a virtually identical motion in his pending case where denial of his PC placement requests is at issue, *Murphy v. Hughes, et al.*, Case No. 24-cv-107-SMY (S.D. Ill. filed Jan. 16, 2024, see Doc. 38). Plaintiff's request for relief in the TRO motion will be reviewed as appropriate in that case.

## DISPOSITION

Counts 1-5, the First Amended Complaint, and the entire case are **DISMISSED** pursuant to 28 U.S.C. § 1915A. Counts 1, 3, 4, and 5 fail to state a claim upon which relief may be granted; Count 2 is barred by claim preclusion and is therefore frivolous. *See, e.g.*, *Gleash v. Yuswak*, 308 F.3d 758, 762 (7th Cir. 2002) (a suit that is squarely barred by claim preclusion is frivolous). This dismissal is **with prejudice** and without further leave to amend. The Court counts the dismissal of this action as one of Plaintiff's three allotted "strikes" under 28 U.S.C. § 1915(g).

Ordinarily, a plaintiff whose complaint fails to state a claim upon which relief may be granted is given an opportunity to amend his pleading to correct the deficiencies. *See* FED. R. CIV. PROC. 15(a). However, leave to amend need not be granted if further amendment would be futile. *See Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). *See also Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008) (noting that leave to amend may be denied for repeated failure to cure deficiencies).

Here, the Court explained why Plaintiff's original Complaint failed to survive threshold review, gave him an opportunity to amend his complaint, and included guidance on how he might state a viable constitutional claim. (Doc. 11, p. 5-8). However, Plaintiff's First Amended Complaint essentially restated the same claims presented in the original Complaint, with the additional allegation that Defendants' policies ran afoul of his constitutional rights (see Count 1 and Count 5). Further, the retaliation claim in Count

2 is barred by claim preclusion. For these reasons, the Court finds that another amendment of Plaintiff's claims in this action would be futile and declines to grant Plaintiff a second opportunity to amend.

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. *See* FED. R. APP. PROC. 4(a)(1)(A). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll (suspend) the 30-day appeal deadline. *See* FED. R. APP. PROC. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. If the appeal is found to be non-meritorious, Plaintiff may also incur another "strike."

A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If Plaintiff chooses to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. PROC. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-726 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-859 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS SO ORDERED.**

**DATED: March 14, 2025.**

Digitally signed by Judge Sison
Date: 2025.03.14 15:09:37 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**